FILED'09 OCT 29 10:16USDC·ORM

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

JAMES KELLY,

              Plaintiff,

    v.

IRONWOOD COMMUNICATIONS
INC., a Nevada Corporation,

              Defendant.

Case Number CV 08-3058-CL

**FINDINGS OF FACT &
CONCLUSIONS OF LAW**

Clarke, Magistrate Judge:

Plaintiff James Kelly ("Plaintiff") filed a complaint against Defendant Ironwood

Communications, Inc. ("Defendant") alleging three claims for unlawful discrimination against

peoples with disability in violation of Or. Rev. Stat. § 659A.112, refusal to reinstate in violation

of Or. Rev. Stat. § 659A.046,  and retaliation for filing a workers' compensation claim in

violation of Or. Rev. Stat. § 659A.040.  Plaintiff dismissed the disability discrimination claim,

and the court entered summary judgment on the refusal to reinstate claim.  Plaintiff at trial

contended that Defendant discriminated and retaliated against him for invoking the workers'

Compensation system in violation of Or. Rev. Stat. § 659.A040.  Plaintiff sought economic and

noneconomic damages.

A court trial commenced on October 13, 2009, and was completed on October 15, 2009, on which date the court took the case under advisement.  The court now issues the following Findings of Fact and Conclusions of Law.   For the reasons that follow, the court finds in favor of Defendant.

## STIPULATED FACTS

The parties submitted, and the court sets out in full, the Stipulated Facts.
Plaintiff James Kelly and Defendant Ironwood Communications, Inc. stipulate to the following facts.

1.      James Kelly, the plaintiff, was and is a resident of Klamath County.

2.      Mr. Kelly was employed by Defendant, Ironwood Communications, Inc. ("Ironwood"), as a satellite installer. Ironwood is a Nevada corporation authorized to do business within the State of Oregon.  Ironwood regularly conducts business activity in Jackson County, Oregon.  Ironwood has employed more than fifty (50) employees since Mr. Kelly began working for Ironwood.

3.      180 Connect is the parent company of Ironwood.

4.      Mr. Kelly began working for Ironwood in December 2004.  Mr. Kelly did no work for Ironwood after August 5, 2006.

5.       Mr. Kelly understood that he was an at will employee.

6.       As a Satellite Installer, Mr. Kelly's position called for him, in part, to (1) drive approximately 200 miles per day; (2) sit for approximately three to six hours per day; (3) spend one to three hours per day climbing ladders to install equipment on customer's roofs; (4) crawl in small spaces; and (5) carry heavy equipment

Findings of Fact & Conclusions of Law  - 2

weighing at least 40 pounds.  These are essential functions of the position of

Satellite Installer.  Mr. Kelly admits he could not perform these job duties.

7.      Before Mr. Kelly filed a workers' compensation claim in November 2005, Mr.

Kelly filed three separate workers' compensation claims in 2005.

8.      At all material times, Mike Prill was a supervisor employed by Ironwood.  All of

Mr. Prill's actions and conduct concerning Mr. Kelly were within the course and

scope of Mr. Prill's employment with Ironwood.

9.       At all material times, Hanifah Chiku was employed by 180 Connect.  Ms. Chiku

was the corporate claims administrator for Ironwood and 180 Connect for

workers' compensation claims, including Mr. Kelly's workers' compensation

claim.  All of Ms. Chiku's actions and conduct concerning Mr. Kelly were within

the course and scope of Ms. Chiku's employment with 180 Connect.

10.     On November 12, 2005, while Mr. Kelly was working for Ironwood he was

injured on-the-job in a work-related auto-accident.  Mr. Kelly received multiple

injuries in the collision including cervical and thoracic sprains and strains and

herniated disks at T5-6 and T7-8.

11.     Mr. Kelly sought treatment and his physician filed a workers' compensation claim

for Mr. Kelly for his on the job injuries.  Mr. Kelly also filed a workers'

compensation claim.  In November 2005, Mr. Kelly was taken off work on orders

of his physician because of his work-related injury.

12.     Ironwood granted Mr. Kelly a leave of absence from the date of his accident, on

November 12, 2005, until he returned to work in March 2006.

Findings of Fact & Conclusions of Law  - 3

13.    Ironwood's workers' compensation insurance provider was Liberty Northwest
Insurance ("Liberty"). At all times material, Liberty was acting as an agent of
Ironwood in relation to Mr. Kelly's workers' compensation claims.

14.    In December 2005, Liberty accepted the compensability of Mr. Kelly's November
2005 workers' compensation claim. Liberty accepted cervical and thoracic strains
as compensable injuries caused by the accident.

15.     As early as January 2006, Ms. Chiku formed the opinion that Mr. Kelly seemed
to be taking advantage of his situation and seemed disinterested in returning to his
installer position.

16.    On or about February 2006, Mr. Kelly's attending physician, Dr. Reischer, MD,
gave Mr. Kelly a release to return to work with Ironwood on light or modified
duty.  Mr. Kelly, in turn, provided the release to return to work to Ironwood and
Ironwood offered Mr. Kelly a light duty position at that time.

17.    Mr. Kelly refused the modified light duty position offered to him in Douglas,
Lane, and Coos Counties, Oregon because he did not believe it complied with his
medical restrictions.  In March, 2006, Ironwood offered Mr. Kelly an alternative
modified light duty position in Klamath, Modoc, Lake, and Jackson Counties,
which Mr. Kelly accepted.  Mr. Kelly was paid $10.00 per hour in that position.

18.    Mr. Kelly's doctor restricted him to light duty insofar as he (1) could not lift more
than 20 pounds whatsoever, (2) could not lift between 10 and 19 pounds for less
than three hours, (3) could do no crawling or climbing, (4) could not sit for more
than one hour at a time, and (5) could not work more than eight hours in a single

Findings of Fact & Conclusions of Law  - 4

day.  Since Mr. Kelly's accident on November 11, 2005, Mr. Kelly has been

unable to work in any capacity as a Satellite Installer.

19.    On May 19, 2006, Liberty asked Mr. Kelly submit to an Insurance Medical

Examination by George McNeil, M.D.  Dr. McNeil wrote a report in which he

stated "At this time [Mr. Kelly's] work capacity is that of light duty.  However, I

think that he can do his regular job."

20.    On June 23, 2006, Mr. Kelly's attending physician, Kristen Reischer, MD, signed

a report in which she set forth disagreements she had with certain aspects of Dr.

McNeil's report.  On or about June 29, 2006, Liberty received Dr. Reischer's June

23, 2006 report.  Ironwood Communications also received a copy of Dr.

Reischer's June 23, 2006 report.

21.    On July 17, 2006, Ms. Chiku sent Mr. Kelly a letter offering to reinstate Mr. Kelly

to his regular position of installer.  Ms. Chiku made the decision to terminate Mr.

Kelly's light duty position and asked that he return to his regular job based upon

the medical information available to her.  Ms. Chiku had the authority to make

that decision and she did not consult with a supervisor prior to making that

decision.

22.    On July 21, 2006, Liberty closed Mr. Kelly's workers' compensation claim.

23.    Based upon communications with Mr. Kelly, Ms. Chiku anticipated Mr. Kelly

would protest the closure of his workers' compensation claim and would file an

appeal.

24.    On July 24, 2006, Mr. Kelly notified Ms. Chiku that his treating physician had not

Findings of Fact & Conclusions of Law  - 5

released him to his preinjury position.

25.    On August 5, 2006, Mr. Prill, who was Mr. Kelly's supervisor at that time, spoke

with Mr. Kelly. During that conversation, Mr. Prill and Mr. Kelly talked about the

fact that Ironwood had discontinued the modified light duty position based on the

IME and further spoke about Ironwood's offer to reinstate Mr. Kelly to the

installer position.

26.    During the August 5, 2006 meeting, Mr. Prill told Mr. Kelly that he could either

resume his regular position as an installer, or, if he did not want to do that, talk

with his attorney about his options.

27.    On August 5, 2006, Mr. Kelly told Mr. Prill that his doctor had not released him

from light duty and that he was unable resume his pre-injury position at that time.

Mr. Kelly also told Mr. Prill that it could take a "couple of years" to resolve the

appeal of his workers' compensation award and that he might never be released to

the Satellite Installer position.

28.    Mr. Kelly has not performed any work for Ironwood since August 5, 2006.

29.    After the August 5, 2006 meeting with Mr. Prill, Mr. Kelly called Dana Wood,

who worked in Ironwood's Human Resources Department and left a message,

asking her to call him. Ms. Wood did not return his call.

30.    After the August 5, 2006 meeting, Ironwood has not contacted Mr. Kelly about

returning to work.

31.    Mr. Kelly is not aware and has not identified any employee who has been placed

in a permanent light duty position.

Findings of Fact & Conclusions of Law  - 6

32.    On May 25, 2007, Mr. Kelly filed a verified administrative complaint with the

Oregon Bureau of Labor and Industries against Ironwood, alleging that he was

retaliated against by Ironwood for filing a workers' compensation claim.

33.    On January 29, 2008, the Oregon Bureau of Labor and Industries issued a letter to

Mr. Kelly informing him of his right to file a civil suit relating to his BOLI

complaint.

34.    On April 25, 2008, Mr. Kelly filed a complaint against Ironwood in Jackson

County Circuit Court, Case No. 08-1999-L7.

35.    On May 27, 2008, Ironwood removed that Circuit Court action to the United

States District, which is the current pending action, United States District Court,

District of Oregon, Case No. CV-08-3058-CL.


**APPLICABLE LAW**

Or. Rev. Stat. § 659A.040 provides:

It is an unlawful employment practice for an employer to discriminate against a
worker with respect to hire or tenure or any term or condition of employment
because the worker has applied for benefits or invoked or utilized the procedures
provided for in ORS chapter 656 or has given testimony under the provisions of
those laws.

The parties agree on the necessary elements for Plaintiff to prevail under Or. Rev. Stat. §

659A.040.  First, plaintiff must show that he invoked the workers compensation system.  Second,

there must be an adverse action. Defendant argues that Plaintiff must show he was retaliated

against in the tenure or the terms or conditions of employment.  Third, there is a casual link

between the first and second elements in that plaintiff was retaliated against *because* he invoked

Findings of Fact & Conclusions of Law  - 7

the workers' compensation system. <u>Hardie v. Legacy Health Sys.</u>, 167 Or. App. 425, 433, 6 P. 3d

531 (2000); <u>Kotelnikov v. Portland Habilitation Center</u>, 545 F. Supp. 2d 1137, 1139 (D. Or.

2008) (<u>citing</u> <u>Kirkwood v. Western Hwy Oil Co.</u>, 204 Or. App. 287, 293 129 P.3d 726 (2006)

and <u>Williams v. Freighliner, LLC.</u>, 196 Or. App. 83, 90, 100 P. 3d 1117(2004)).

     There was no dispute at trial as to the first and second elements.  Plaintiff clearly invoked

the workers compensation system and was later put on leave and eventually terminated by

Defendant.  The remaining issue is whether Plaintiff can prove the third element, casual

connection, between his invocation of the system and the adverse action.

     The parties generally agree on the proper standard:  plaintiff must show that a *substantial*

*factor* in the alleged discrimination was the invocation of the workers compensation system.

<u>Hardie,</u>  167 Or.App. at 435-36 (emphasis added).  A *substantial factor* is one that makes a

difference.  <u>Id.</u>; <u>Dickison v. Wal-Mart Stores, Inc.</u>, 2007 WL 1959287 (D. Or.).  "The crux of the

standard . . . is whether, in the absence of the discriminatory motive, the employee would have

been treated differently." <u>Carson v. FedEx Ground Packaging System, Inc.</u>, 2006 WL 37515266

(D. Or.).  There can be no liability for retaliation if the employer's reason for taking a challenged

employment action is legitimate and nondiscriminatory.  <u>Olsen v. ASI Staffing, Inc.</u>,  2005 WL

1839015 ( D. Or.).  Mere temporal proximity between the filing a workers' compensation claim

and termination is insufficient without more to satisfy the causation element.  <u>Ledesma v.</u>

<u>Freightliner Corp.</u>, 97 Or. App. 379, 383, 776 P. 2d 43 (1989).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiff is a resident of Klamath County and began work for Ironwood Communications in December 2004 as a Remote Satellite Installer. This position is physically demanding requiring the employee to climb ladders and lift heavy equipment. (Ex. 4.)

The parent company of Ironwood Communications is 180 Connect. At all times relevant to this case, Hanifah Chiku was a workers compensation administrator for 180 Connect. Dana Wood was a Human Resources specialist for 180 Connect. Mike Prill was the Operations Manager for Ironwood based in Medford and acted as Plaintiff's direct supervisor.

Ironwood receives workers compensation claims on a frequent basis. Liberty Mutual ("Liberty"), also known as Liberty Northwest, was the workers' compensation insurer for both Ironwood and 180 Connect. William Baumgartner and Kimberly Patterson were claims adjusters for Liberty.

Defendant Ironwood attempts to put injured workers in temporary light duty positions pending the completion of their claim and return to full duty. (Ex. 103-49.) Ironwood does not place workers on permanent light duty.

On November 12, 2005, Plaintiff was injured in a work-related motor vehicle accident and sustained neck and back injuries. He filed a workers compensation claim, and Liberty accepted cervical and thoracic strains as compensable injuries. Plaintiff was unable to work following the accident. He was released to light duty with restrictions by his primary care physician Dr. Kristen Reischer on January 3, 2006. (Ex. 12.) Prior to the November 12, 2005 injury, Plaintiff Kelly had filed three relatively minor workers compensation claims that were processed in the normal course and did not significantly interfere with his work.

Findings of Fact & Conclusions of Law  - 9

Upon being released to light duty, Defendant offered Plaintiff a temporary modified quality control position in January 2006. (Ex. 15-1.) This position mistakenly assigned Plaintiff to a region of four counties that were outside the range of Plaintiff's driving restrictions.  Plaintiff rejected this position, following the appropriate procedures and testified to his experiences at trial.  The court found Plaintiff Kelly to be a honest, sincere, straightforward witness who was doing his best to get back to work.

After Plaintiff rejected this position,  Liberty and 180 Connect exchanged a series of unprofessional emails displaying an unnecessary and unfortunately adversarial tone toward Plaintiff.  (See Exs. 17, 19, 23, and 27.)  These emails reflect that Ms. Chiku felt that Plaintiff was taking advantage of his situation.  However, the court did not hear evidence of Plaintiff's actions to justify the markedly adversarial tone.  The court notes that the professionalism appears to have increased when Kimberly Patterson of Liberty assumed the role of adjuster on Plaintiff's claim in the spring 2006.

In March 2006 Ironwood offered Plaintiff a temporary modified quality control position in appropriate counties near his home that conformed with his restrictions, correcting its previous mistake of out of region counties.  Plaintiff accepted the modified position and immediately reported to work.

There was some evidence at trial that Ironwood was frustrated that Plaintiff was not returning to his previous, permanent position as remote satellite installer, although this is not entirely clear to the court.  Ms. Chiku suggested the possible need to do surveillance on Plaintiff during his work day. (Exhibit 33.)

After being released to light duty in January 2006, Plaintiff continued to seek medical

Findings of Fact & Conclusions of Law  - 10

treatment for his injuries. In February 2006 Plaintiff had an MRI of his thoracic spine that

showed findings of degenerative changes and/or herniations at multiple levels. Liberty also

arranged for Plaintiff to be examined by Dr. George Mc Neil on May 19, 2006. Liberty had

accepted as compensable injuries cervical and thoracic strains, although Plaintiff's primary

treating physician believed there were additional claims not yet accepted. It is not clear to the

court whether the examination was limited solely to these claims.

Dr. McNeil references Plaintiff's February MRI of his thoracic spine, but he clearly

downplays the significance of the findings. He does not relate them to the November 2005

injury. (Ex. 29- 8.) Dr. McNeil was asked the following question:

> "What is Mr. Kelly's current work capacity with respect to the industrial injury? If
> it is not a regular release, are permanent work restrictions recommended? IF there
> are restrictions, are they due to the industrial injury or unrelated conditions?"

(Ex. 29-10.) He answered, "At this time his work capacity is that of light duty. However, I think

that he can do his regular job."

At trial, there was testimony as to whether this statement applied only to the accepted

claims of cervical and thoracic strains or was broader to include Plaintiff's general condition.

Ms. Patterson admitted there was some ambiguity in the answer itself.

The opinion of Plaintiff's primary treating physician on this issue was also initially

unclear. First, Ms. Patterson received a signed letter from Dr. Reischer's office concurring with

Dr. McNeil. At this time, Dr. Reischer was on maternity leave. Upon returning to the office, she

personally responded to Liberty's letter. On May 30, 2006, she sent Liberty a explaining that she

did not concur with Dr. McNeil. (Ex. 30.) She also sent a follow up letter on June 23, 2006,

indicating that she disagreed with Dr. McNeil's report in its entirety. (Ex. 31.) Upon request

Findings of Fact & Conclusions of Law  - 11

from Ms. Patterson, on July 7, 2006, Dr. Reischer clarified her position and agreed that Plaintiff was medically stationary as to the accepted conditions of cervical and thoracic. (Ex. 34.) However, she felt that Plaintiff also had herniations in the thoracic spine that were caused by the accident, preventing Plaintiff from returning to his remote satellite installer position. (Ex. 34.)

The evidence at trial was that Liberty made the decision, based on the report of Dr. McNeil and Plaintiff's "medically stationary condition" to close Plaintiff's claim. Liberty notified Plaintiff of its decision by letter dated July 12, 2006. (Exs. 38, 39.) Because Plaintiff was concerned that Liberty had not accepted his thoracic herniations as compensable claims, he was represented by counsel when he received this letter.

Ms. Chiku contacted Plaintiff by letter on July17, 2006, and requested that he return to his previous position as remote satellite installer. (Ex. 40.) Ms. Chiku explained at trial that she acted on  Liberty's decision to close Plaintiff's claim as he was medically stationary.  Liberty and Ironwood were aware that Plaintiff would disagree with this position and would likely seek an appeal.

After receiving the notification of reinstatement, Plaintiff met with Mr. Mike Prill in August 2006.  Plaintiff explained that he could not return to work because his primary treating physician did not advise him to perform the physical tasks of this position.  Plaintiff wanted Ironwood to continue his temporary modified quality control position indefinitely while he appealed Liberty's denial of his thoracic herniations as accepted conditions, an appeal which, he admitted, could take "years."  Ironwood declined to do so and placed Plaintiff on "leave status."

There was evidence at trial that Plaintiff Kelly attempted to telephone Ms. Wood and other individuals at Ironwood, but he testified that no one returned his calls.  Defendant suggests

Findings of Fact & Conclusions of Law  - 12

this was because Plaintiff had retained counsel and its procedures only permitted contact with his

attorney.  While this may be true, the court notes that Defendant could have handled this

situation better.  For example, it would have been easy simply to advise Plaintiff that Ironwood

would need permission from his attorney to speak directly with him.

Ironwood did not consider Plaintiff for other positions as his limitations precluded any

positions in the Medford region without modifications.  Ironwood was not required to promote

Plaintiff if the only available position was effectively a promotion from his installer position.

Plaintiff pursued his workers' compensation remedies and eventually prevailed in part:  his

thoracic herniation at T7-8 was accepted. (Ex. 43.)  The current status of that claim was not made

clear to the court.

The court is sympathetic to Plaintiff and can understand his frustration.  Ironwood

terminated his modified temporary position  and required him to either return to his remote

satellite installer position, a position which his doctor said he could not do, or be placed on leave

and be eventually terminated.  Ironwood could have handled the situation differently, but it was

not legally required to do so.

The court concludes that Ironwood had no legal obligation to continue the temporary

modified position and had legitimate reasons, based on company policy, to require Plaintiff to

return to the remote satellite installer position.  In taking this employment action, Ironwood acted

in good faith and consistent with company policy by relying on Liberty's closure of Plaintiff's

claim.  Liberty was justified in closing the claim because Dr. McNeil concluded that Plaintiff's

compensable positions were medically stable.  The fact that Plaintiff was later successful in part

on his appeal does not make a legal difference to the question before the court.

Findings of Fact & Conclusions of Law  - 13

The court finds that Defendant Ironwood did not discriminate or retaliate against Plaintiff Kelly in violation of Or. Rev. Stat. § 659A.040.  Plaintiff's invocation of the workers' compensation system was neither a substantial factor nor did it make a difference in Ironwood's decision to terminate the temporary modified quality control position and to reinstate Plaintiff. The court directs that Judgement be entered for Defendant.

DATED this ___29___ of October, 2009.

Mark D. Clarke
United States Magistrate Judge

Findings of Fact & Conclusions of Law  - 14